NO. 07-08-0008-CR

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL B

 JANUARY 31, 2010
 _____________________________

 DANIEL TOLOPKA, II, APPELLANT

 V.

 THE STATE OF TEXAS, APPELLEE
 _________________________________

 FROM THE 278TH DISTRICT COURT OF LEON COUNTY;

 NO. CM-06-522; HONORABLE KENNETH KEELING, JUDGE
 _______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 MEMORANDUM OPINION

Appellant Daniel Tolopka II appeals from his conviction of murder and the resulting sentence of ninety-nine years in the Texas Department of Criminal Justice - Institutional Division. Through three issues, appellant contends the trial court abused its discretion in admitting evidence obtained through two search warrants and in admitting photographs of the victim's injuries. Finding no error, we affirm.

 
 
 
 
 Background
 
 
 Appellant's indictment charged that he intentionally and knowingly caused the death of Joseph Clampitte III, by shooting him with a firearm.1 Following his plea of not guilty, the matter proceeded to trial by jury. Appellant's evidence included the testimony of a crime scene reconstructionist and a private investigator, and his own testimony.

 Appellant does not challenge the sufficiency of the evidence supporting his conviction, so we will recite only so much of the evidence as is necessary to an understanding of the issues presented. Appellant lived on thirteen acres in Leon County. Clampitte lived nearby, their homes separated by a few hundred feet. From the evidence presented, the jury could have determined that shortly before noon on June 3, 2006, appellant walked out on his property, wearing his CZ 75 B 9mm pistol. He soon discovered two of his show hogs had escaped his property and went to look for them, eventually entering Clampitte's property on his search.
 Appellant testified he encountered Clampitte. He said Clampitte confronted him, telling him he had shot appellant's hogs and threatening to shoot appellant. Appellant thought Clampitte had a gun. He pulled his pistol and shot Clampitte. The Dallas County Medical Examiner testified Clampitte died as a result of multiple gunshot wounds, with the fatal wound coming from a shot in the back of Clampitte's head. 

 A while later, appellant called the 911 operator with the report he heard an argument and shots and saw someone running away from the scene. Officers responded, finding Clampitte's body lying on his property underneath a tree from which the carcass of a hog was hanging. After officers interviewed appellant several times during the day and were unable to find tracks of the person appellant said he saw run away, officers obtained a warrant to search appellant's property for "9MM and 45 caliber weapons and ammunition." An officer found a CZ 75 B 9mm pistol in an unused stove in appellant's house.2 Testing in February 2007 revealed the CZ pistol matched spent casings found at the murder scene and bullets recovered from Clampitte's body. A second search warrant was issued in April 2007, pursuant to which officers seized additional 9mm casings and spent bullets from locations on appellant's property he had used for target practice.
 Appellant testified at trial that he lied to the 911 operator and to officers who spoke with him that day because he was scared. He testified he shot Clampitte in self-defense.
 Analysis 
Search Warrants
 In appellant's first and second issues, he argues the two warrants, the first issued on June 3, 2006, the day of the murder, and the second on April 16, 2007, both used to obtain evidence linking him to Clampitte's shooting, were obtained using affidavits that were misleading due to omissions of material facts and failed to establish probable cause. As a result, appellant contends, the trial court erred in failing to grant appellant's motion to suppress and in admitting evidence obtained through each of the warrants.
 On the day of the murder, appellant voluntarily turned over to officers two weapons, a 9mm Ruger pistol and a 9mm rifle. The Ruger pistol was contained in a CZ box but appellant told the officers he had lost his CZ pistol on his property about a month earlier.
On that same day, one of the deputies prepared an affidavit, pursuant to article 18.02(12) of the Code of Criminal Procedure,3 seeking a warrant to search appellant's residence. 
 The April 2007 warrant was issued pursuant to Code of Criminal Procedure article 18.02(10).4 It authorized a search of appellant's 13-acre property "to determine if a CZ 75 B model 9mm is in the pasture of said premises as stated by the party," and further authorized seizure of "9 mm spent shell casings, spent 9 mm projectiles, CZ 75 B model 9 mm handgun and other 9 mm firearms." 

 The April 2007 warrant was based on the affidavit of a deputy sheriff who had been on appellant's property with him previously. The affidavit said the deputy had, some two years before the murder, seen appellant fire a CZ 75 B 9mm handgun into a dead tree on the property, and that appellant had not then recovered the spent shell casings. It also recited that after the murder deputies had seen a dirt berm, old tires, a washing machine and "numerous trees and posts" on the property with apparent bullet holes, indicating they had been used for target practice, and said spent shell casings would remain in the nearby dirt and bullets in the objects into which they were fired. The affidavit further said that the spent target-practice casings and bullets located on the property pursuant to the warrant could be compared with the casings recovered near Clampitte's body and the bullets found in Clampitte, providing further evidence of appellant's guilt. 
 The affidavit also recited appellant's statement to officers that he had lost a CZ 75 B 9mm pistol in his pasture about a month before the murder, and said "a search for a 9mm CZ 75 B will determine the credibility of [appellant] and its absence will provide evidence that [appellant] committed [the murder]." The affidavit omitted the facts that a CZ 75 B 9mm pistol had been recovered from appellant's house shortly after the murder, and that tests already indicated it was the murder weapon.
 Applicable Law
Standard of Review for Motion to Suppress
 A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999). See also Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). An appellate court must view the evidence in the light most favorable to the court's ruling. State v. Ballard, 987 S.W.2d 889, 891 (Tex.Crim.App. 1999). When there are no explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported in the record. Swain v. State, 181 S.W.3d 359, 365 (Tex.Crim.App.2005), cert. denied, 549 U.S. 861, 127 S.Ct. 145, 166 L.Ed.2d 106 (2006); Estrada v. State, 154 S.W.3d 604, 607 (Tex.Crim.App. 2005). In a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Crim.App. 2000). Finally, if the trial court's decision is correct on any theory of law applicable to the case, we will uphold the decision. Ross, 32 S.W.3d at 855-56; Singleton v. State, 91 S.W.3d 342, 347 (Tex.App.--Texarkana 2002, no pet.). 
Standard of Review for Affidavit in Support of Search Warrant
 As the Court of Criminal Appeals recently reaffirmed, our jurisprudence recognizes a "constitutional preference for the warrant process in which police officers present their facts to a neutral magistrate to decide if there is probable cause to issue that warrant." Rodriguez v. State, 232 S.W.3d 55, 61 (Tex.Crim.App. 2007); Swearingen v. State, 143 S.W.3d 808, 811 (Tex.Crim.App. 2004) (Cochran, J., dissenting). Rather than applying a de novo review of a magistrate's probable cause finding, which is a question of law, we must pay great deference to a magistrate's finding of probable cause "to encourage police officers to use the warrant process rather than making a warrantless search and later attempting to justify their actions by invoking some exception to the warrant requirement." Rodriguez, 232 S.W.3d at 61.
To justify the issuance of a search warrant, the affidavit submitted in support must set forth facts sufficient to establish probable cause. Probable cause to support the issuance of a search warrant exists where the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. Ramos v. State, 934 S.W.2d 358, 363 (Tex.Crim.App. 1996); Cassias v. State, 719 S.W.2d 585, 587 (Tex.Crim.App. 1986) (emphasis added). When the facts and circumstances within the knowledge of the affiant, arising from a reasonably trustworthy source, would warrant a person of reasonable caution to believe that the items of contraband or evidence of a crime may presently be found in a specified place, there is probable cause to issue a warrant to search that place. Id. A search warrant affidavit must be read in a common sense and realistic manner, and reasonable inferences may be drawn from the facts and circumstances contained within the four corners of the affidavit. Id. at 587-88.
 Whether the facts mentioned in the affidavit are adequate to establish probable cause depends on the totality of the circumstances. Ramos, 934 S.W.2d at 362-63. Statements made during a motion to suppress hearing do not factor into the probable cause determination; rather, we examine only the four corners of the affidavit to determine whether probable cause exists. Blake v. State, 125 S.W.3d 717, 723 (Tex.App. - Houston [1[st] Dist.] 2003, no pet.) (citations omitted). Cf. Cates v. State, 120 S.W.3d 352, 355 n.3 (Tex.Crim.App. 2003) (setting forth the distinction between a suppression hearing and a Franks hearing where additional evidence may be admitted to show the falsity of assertions within an affidavit). 

Franks v. Delaware
 Under Franks, a defendant bears the burden of showing by a preponderance of the evidence at a suppression hearing that an affidavit contains a false statement made either knowingly and intentionally or with reckless disregard for the truth. Franks, 438 U.S. at 154. The heart of the decision in Franks goes to the proof of knowledge by a police officer that the information he possesses is insufficient to support the issuance of a warrant. Ramsey v. State, 579 S.W.2d 920, 922 (Tex.Crim.App. 1979). Any affidavit sworn to with knowledge that the information in the affidavit is false, or with reckless disregard of the truth of the information, cannot be said to have been in good faith and in accordance with the law. Id. 
 Application to Facts
June 3, 2006 Warrant
 Appellant first challenges issuance of the June 2006 warrant. The State argues appellant failed to preserve his appellate issue for our review, and we agree.
 During the hearing on the defense's motion to suppress, appellant contended the CZ pistol seized under the June 2006 warrant should be suppressed because the probable cause affidavit was insufficient to support the search warrant. He specifically asserted it contained insufficient facts to show the gun was located at appellant's residence or to show the property listed in the warrant was contraband. He contended also that officers exceeded the scope of the search warrant.5 Absent, however, from appellant's contentions at trial was the issue he raises on appeal, that the probable cause affidavit in support of the June 2006 warrant contained material omissions. This issue was not raised before the trial court, and thus is not preserved for our review. A defendant's appellate contention must comport with the specific objection made at trial. See Wilson v. State, 71 S.W.3d 346, 349 (Tex.Crim.App. 2002) (appellate contention must comport with that made at trial); Broxton v. State, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995) (objection stating one legal theory may not be used to support a different legal theory on appeal).
April 16, 2007 Warrant
 Appellant next argues the trial court abused its discretion in denying his motion to suppress and in admitting evidence of bullets and casings found during the search pursuant to the April 2007 warrant. Appellant argues that the affidavit was misleading because it "wholly and intentionally omitted any reference to the fact officers had seized the CZ 75 B pistol the previous June or that it was submitted with the other two firearms for testing" and omitted the fact DPS had already conducted comparison of the casings found on the Clampitte's property with those fired from the CZ 75 B 9mm pistol.
 The Court of Criminal Appeals has not yet determined whether a Franks analysis applies to omissions as well as false statements. Wise, 223 S.W.3d at 557, citing Massey v. State, 933 S.W.2d 141, 146 (Tex.Crim.App. 1996). However, in Renteria v. State, 206 S.W.3d 689, 704 (Tex.Crim.App. 2006), the Court assumed Franks applies to omissions but concluded that even if information omitted from the affidavit executed in support of a search warrant had been included, the magistrate there still would have had probable cause to issue the warrant.
 We find the court's analysis in Renteria applies also in this case. Even had the affidavit included the fact a CZ 75 B 9mm pistol had been recovered from appellant's house, and the fact tests indicated it was the murder weapon, the magistrate still would have had probable cause to believe the spent shell casings and bullets from target practice could be found on appellant's property. And the inclusion of the omitted facts would not have given the magistrate reason to believe other statements in the affidavit were false, or to doubt the affiant's good faith, in view of appellant's assertion his CZ pistol had been lost. If tests showed similarities between shell casings and bullets from appellant's target practice with those from the murder, or if they indicated the target practice was conducted with the CZ pistol found in appellant's house, appellant would be further connected to the offense. We see no abuse of discretion in the trial court's denial of appellant's motion to suppress, based on the omission of facts from the affidavit. See Renteria, 206 S.W.3d at 703-04. 
 For the reasons discussed, we overrule appellant's first and second issues. 
Admission of Photographs
 In appellant's last issue, he asserts the trial court erred in admitting several photographs he characterizes as "graphic" and depicted the same subject matter as other exhibits.6 We disagree and find the trial court did not abuse its discretion in admitting the photographs.
 The admissibility of a photograph is within the sound discretion of the trial judge. Gallo v. State, 239 S.W.3d 757, 762 (Tex.Crim.App. 2007), citing Williams v. State, 958 S.W.2d 186, 915 (Tex.Crim.App. 1997). Generally, a photograph is admissible if verbal testimony as to matters depicted in the photograph is also admissible. Gallo, 239 S.W.3d at 762, citing Long v. State, 823 S.W.2d 259, 271-72 (Tex.Crim.App. 1991). In other words, if verbal testimony is relevant, photographs of the same are also relevant. Gallo, 239 S.W.3d at 762. Texas Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401. A visual image of the injuries [a defendant] appellant inflicted on the victim is evidence that is relevant to the jury's determination. Id. The fact that the jury also heard testimony regarding the injuries depicted does not reduce the relevance of the visual depiction. Id. 
 Rule 403, however, requires the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. Gallo, 239 S.W.3d at 762, citing Williams, 958 S.W.2d at 196. A court may consider several factors in determining whether the probative value of photographs is substantially outweighed by the danger of unfair prejudice. Id. These factors include, but are not limited to: (1) the number of exhibits offered; (2) their gruesomeness; (3) their detail; (4) their size; (5) whether they are black and white or color; (6) whether they are close-up; and (7) whether the body is depicted naked or clothed. Id. The availability of other means of proof and the circumstances unique to each individual case must also be considered.7 Id. However, photographs of a murder victim may be admissible to show the manner and means of death, even if they merely corroborate other kinds of evidence. Moreno v. State, 1 S.W.3d 846, 857 (Tex.App. - Corpus Christi 1999, pet. ref'd); Bounkhoun v. State, No. 07-07-0129-CR, 2007 WL 3254422 (Tex.App. - Amarillo Nov. 5, 2007, no pet.) (mem. op., not designated for publication). Finally, that a relevant picture is gruesome does not alone require its exclusion from evidence. Bounkhoun, No. 07-07-0129-CR, 2007 WL 3254422 at *1, citing Sonnier v. State, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995). After independently evaluating all of these factors, we will reverse a trial court's admission of photographic evidence only when the probative value of the evidence is small and its inflammatory potential is great. Ramirez v. State, 815 S.W.2d 636, 647 (Tex.Crim.App. 1991). See also Castilleja v. State, No. 07-06-0062-CR, 2007 WL 2163111 (Tex.App. - Amarillo July 24, 2007, pet. stricken) (mem. op., not designated for publication).

 More than fifty photographs were introduced at trial. Appellant complains of nine photographs, contending they should have been excluded because any probative value was outweighed by the unduly prejudicial and cumulative nature of the pictures. As an example, the first challenged exhibit, State's exhibit 91, shows the position of Clampitte's body when it was found. Some of his injuries are visible. At trial, appellant objected that the photograph had little probative value because it was cumulative of State's exhibit 6 that had been offered without objection. State's exhibit 6 shows the victim lying face-down on the ground but the wounds to the head cannot be clearly seen. The second photograph of which appellant complains, State's exhibit 92, shows the victim lying face-down on the ground, fully clothed, with a visible wound on his back through his shirt. Appellant argues on appeal that this photograph was cumulative of State's exhibit 55 and argues that it is inflammatory. State's exhibit 55 shows the victim lying face-down on what appears to be a plastic tarp. The victim is not clothed and a wound on his back is clearly visible. We find exhibit 92 is not cumulative because it does not show the same aspects as exhibit 55. Further, we find exhibit 55, admitted without objection, more likely to be seen as gruesome and inflammatory than the challenged exhibit. Appellant makes similar arguments with respect to the remainder of the nine challenged photographs.
 On our review of the record, we find the trial court did not abuse its discretion in admitting the nine photographs. We do not agree any of the photographs are cumulative of those admitted without objection. All of the photographs appellant challenges here show the victim and his injuries from different angles and show various views of the wounds Clampitte sustained that led to his death. See Ramirez v. State, No. AP-75167, 2007 WL 4375936 (Tex.Crim.App. 2007) (not published) (finding no abuse of discretion in ruling photographs were not duplicative and their probative value not outweighed by prejudicial effect where they showed body from different angles and views). We find none of the photographs more gruesome than would be expected in this sort of crime.8 Gallo, 239 S.W.3d at 763, citing Narvaiz v. State, 840 S.W.2d 415, 429 (Tex.Crim.App. 1992). While we agree that the challenged photographs portray the lifeless body of Clampitte and show his injuries, the photographs do nothing more that portray the consequences of appellant's actions. Castilleja, No. 07-06-0062-CR, 2007 WL 2163111 at *3. Photographs that depict the nature, location, and extent of a wound have been declared probative enough to outweigh any prejudicial effect. Montgomery v. State, 198 S.W.3d 67, 77-78 (Tex.App. - Fort Worth 2006, pet. ref'd). 
 We conclude appellant has failed to establish that either the probative value of the challenged photographs was small or that their prejudicial potential is great. The trial court did not abuse its discretion in admitting the nine challenged photographs. We overrule appellant's last issue and affirm the trial court's judgment.
 James T. Campbell
 Justice
Do not publish.