NO. 07-10-00105-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 17, 2010

_____

JOHN BETLISKEY, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 147TH DISTRICT COURT OF TRAVIS COUNTY;

NO. D-1-DC-10-904002; HONORABLE WILFORD FLOWERS, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, John Betliskey, was convicted of aggravated assault causing bodily injury by using or exhibiting a deadly weapon.[1]  During the punishment portion of the trial, the jury found the allegations of the enhancement paragraph of the indictment true and sentenced appellant to confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of life and assessed a fine of $10,000. Appellant appeals raising three issues.  We will affirm.

_____

[1] See TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon Supp. 2010).

Factual and Procedural Background

Appellant and Gilda Garcia Ruiz lived together in Austin, Texas. On November 26, 2008, appellant and Ruiz had an argument. As a result of the argument, appellant attacked Ruiz and began to strangle her. Ruiz testified that she was unable to remove appellant's hands from around her neck, and she felt as if she could not breathe. At some point during the struggle, Ruiz urinated on herself. As the struggle continued with appellant on top of Ruiz, Ruiz found herself on her stomach when she felt wetness on her face. Ruiz's face was bleeding from bites inflicted by appellant. Ruiz described how appellant picked her up off of the floor by her neck while strangling her and wrenching her neck. After falling back to the floor, Ruiz tried to strike appellant with a stool. Ruiz testified that she regained consciousness and found herself across the room from where she last remembered. Eventually, Ruiz got out of the grasp of appellant. Ruiz asked appellant why he was doing this and stated she loved him. At this point, appellant got up, and Ruiz took the opportunity to run from the house.

Ruiz fled to the home of Victor Valdez, appellant and Ruiz's neighbor. Valdez testified that Ruiz arrived at his home in a very excited and upset state. Valdez immediately noticed Ruiz had marks and bruising on her face. After Ruiz had been in his home for a short period of time, appellant began knocking on the door. When Valdez did not answer the door, appellant began pounding on it. Valdez eventually went outside and spoke with appellant. Appellant immediately accused Valdez of having sexual relations with Ruiz. Valdez testified that appellant appeared extremely angry. Ruiz eventually left Valdez's home through the back door.

2

After escaping from appellant, Ruiz was taken to the hospital by her mother. The attending emergency room doctor, Stefan Hood, testified about his observations of Ruiz on the night in question. During his testimony, Hood opined that an individual's hands, when used to strangle someone, would qualify as a deadly weapon. Appellant's trial counsel cross-examined Hood extensively regarding Ruiz's appearance when examined and whether or not she appeared to be suffering from any serious bodily injury.

During the guilt-innocence portion of the trial, the State introduced a number of photographs that depicted Ruiz's injuries. Of particular note were three sets of photographs that, according to the record, showed the same areas of Ruiz's body at different times. Appellant objected that the second and third set of these photographs were cumulative and their probative value was outweighed by the danger of unfair prejudice. The trial court overruled the objections, ruling that they demonstrated the degree of injury by showing the affected areas at different times.

After hearing the evidence, the jury found appellant guilty of aggravated assault causing bodily injury by using or exhibiting a deadly weapon. During the punishment portion of the trial, appellant pleaded true to the enhancement paragraph. After the State had closed the evidence on punishment, appellant's stepmother testified on his behalf. During her testimony on direct examination, she answered some questions about the impact of appellant's criminal history on his deceased father. During the State's closing argument on punishment, reference was made to the testimony regarding the impact of appellant's criminal history on his father. This led to an

3

objection by appellant. The trial court overruled the objection. The jury found the punishment enhancement allegation true and assessed appellant's punishment at confinement for life in the ID-TDCJ and a fine of $10,000.

Appellant appeals by three issues contending that 1) the evidence is insufficient to support the judgment; 2) the trial court erred in admitting certain cumulative photographs of Ruiz; and 3) the trial court erred in overruling appellant's objection to the improper jury argument of the State. Disagreeing with appellant, we will affirm the judgment of the trial court.

## Sufficiency of the Evidence

As an initial consideration, we observe that appellant's appeal contends that the evidence is both legally and factually insufficient. Appellant's brief was prepared and filed before the Texas Court of Criminal Appeals issued its opinion in Brooks v. State, No. PD-0210-09, 2010 Tex.Crim.App. LEXIS 1240 *25-*26 (Tex.Crim.App. Oct. 6, 2010), wherein the court ruled that there is no distinction between a claim of legal as opposed to factual insufficiency of the evidence. Further, the court expressly overruled Clewis v. State, 922 S.W.2d 126 (Tex.Crim.App. 1996), and its purported application to factual sufficiency questions. Id. at *57. The court appears to urge the reviewing court to apply a more rigorous application of the sufficiency test set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See id. at *58. Therefore, we will review appellant's claims of evidentiary sufficiency under the standard of review set forth in Jackson. See 443 U.S. at 319.

Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson, 443 U.S. at 319; Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). We measure the legal sufficiency of the evidence against a hypothetically correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Finally, when reviewing all of the evidence under the Jackson standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. See Brooks, 2010 Tex.Crim.App. LEXIS 1240 at *37, *39-*40 n.26 (discussing Judge Cochran's dissent in Watson v. State, 204 S.W.3d 404, 448-50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review).[2]

Analysis

To prove aggravated assault causing bodily injury by using or exhibiting a deadly weapon, as charged in the indictment, the State must prove:

1) on or about November 26, 2008

2) appellant

3) intentionally, knowingly, or recklessly

---

[2] We note that this Court has at times quoted Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988) for the proposition that we had to uphold the verdict of the jury unless it was irrational or unsupported by more than a mere modicum of evidence. We view such a statement, insofar as a modicum of evidence being sufficient evidence, as contrary to a rigorous application of the Jackson standard of review urged by the court in Brooks.

4) caused bodily injury to

5) Gilda Garcia Ruiz

6) by grabbing Ruiz on or about the neck

7) and appellant did use or exhibit a deadly weapon

8) to-wit: his hands.

See TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2);[3] Malik, 953 S.W.2d at 240. The Penal Code defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." See § 1.07(a)(8)(Vernon Supp. 2010). Further, the Penal Code defines "deadly weapon," for purposes of this analysis, as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." See § 1.07(a)(17)(B). Finally, "serious bodily injury" is defined in the Penal Code, in part, as "bodily injury that creates a substantial risk of death." See § 1.07(a)(46).

Appellant's evidentiary sufficiency argument focuses on the question of the deadly weapon. Specifically, appellant contends that there was no evidence that appellant's hands were capable of causing serious bodily injury in the manner of their use. The fact that appellant stops his contention at that point in the definition of a "deadly weapon" is illustrative of the failure of appellant to fully understand the import of the testimony of Dr. Hood. The full definition of a deadly weapon includes not only the manner of the use or intended use of the alleged deadly weapon but also the capability of the alleged deadly weapon to cause death or serious bodily injury. See § 1.07(a)(17)(B).

---

[3] Further reference to the Texas Penal Code will be by reference to "section ____," "sec. ___," or "§ ___."

Whether an item is a deadly weapon is determined by reviewing a totality of the facts of the case. See Blain v. State, 647 S.W.2d 293, 294 (Tex.Crim.App. 1983). To show that the hands are a deadly weapon, the State need not show that the hands actually caused serious bodily injury so long as the evidence shows that the hands in the manner of their use were capable of causing serious bodily injury. See Jefferson v. State, 974 S.W.2d 887, 892 (Tex.App.—Austin 1998, no pet.). The State produced the testimony of Dr. Hood, who was qualified by experience, education, and training to render an expert opinion about appellant's use of his hands as a deadly weapon. See TEX. R. EVID. 702.[4] Hood testified that the use of the hands to strangle a victim by interfering with the blood or air flow could cause serious bodily injury. Further, the State also produced the testimony of Dr. David Dolinak, Chief Medical Examiner for Tarrant County, Texas, who testified that the hands can be used as a deadly weapon. Dolinak's opinion was rendered after extensive questioning by the State regarding the evidence of manual strangulation apparent on Ruiz.

When all of this evidence is reviewed in the light most favorable to the verdict, the jury's determination that appellant was guilty beyond a reasonable doubt was not an irrational act. See Brooks, 2010 Tex.Crim.App. LEXIS 1240 at *37, *38-*39 n.26. Accordingly, appellant's first issue is overruled.

---

[4] Further reference to the Texas Rules of Evidence will be by reference to "Rule ___" or "rule ___."

Photographs

Appellant's second issue complains about the introduction of three series of photographs depicting the injuries suffered by Ruiz. The first series of photographs, State's Exhibits 8 through 13, were introduced without objection. The testimony showed that those photographs were taken at the hospital on the night of the assault. The State then moved to introduce State's Exhibits 14 through 19. Appellant objected that exhibits 16 thru 19 were cumulative and that their probative value was outweighed by their prejudicial impact. The trial court, after ascertaining that the photographs were taken at a later date than the first exhibits, overruled appellant's objection. The third series of photographs were State's Exhibits 20 through 25. These photographs were the last photographs taken of Ruiz's injuries and were taken on December 1, 2008.[5] Appellant again objected that these photographs were cumulative and that their probative value was outweighed by the prejudicial impact.

Standard of Review

In <u>Gallo v. State</u>, 239 S.W.3d 757, 762 (Tex.Crim.App. 2007), the Texas Court of Criminal Appeals set forth the standard of review. First, the admissibility of a photograph is left to the sound discretion of the trial judge. <u>Id</u>. at 762. A photograph is generally admissible if verbal testimony as to the matters depicted in the photograph would be admissible. <u>Id</u>. However, even if a photograph is relevant and admissible, it may be excluded if the probative value of the photograph is "substantially outweighed

---

[5] We note that this date would indicate that the third series of photographs were taken at a point in time between the first and second series of photographs.

8

by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Id. (citing Rule 403). Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. Id. (citing Williams v. State, 958 S.W.2d 186, 196 (Tex.Crim.App. 1997)). Finally, we note that a trial court's ruling on a Rule 403 objection is reviewed under an abuse of discretion standard as set forth in Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g). That is to say, to be erroneous, the trial court's decision must be outside the zone of reasonable disagreement. Id.

Analysis

Initially, we observe that appellant's argument infers that he is contending that the photographs were not relevant. The State asserts that the objection made at the time the exhibits were offered did not contain any statements that can be construed to be an objection to the admissibility of the exhibits on the basis of relevance. Our review of the record reveals that appellant objected to State's Exhibits 16 through 25 on two grounds. First, appellant objected that the exhibits were cumulative of the other photographs previously admitted. Second, appellant objected, as stated above, that the probative value of the second and third sets of photographs was substantially outweighed by their prejudicial impact. The first objection is actually part of the analysis for the second objection, a Rule 403 objection. See Rule 403. The second objection is clearly a Rule 403 objection. Therefore, we agree with the State, and to the extent

9

appellant is attempting to argue that the photographs are not relevant, that error was not preserved for appeal.  See Tex. R. App. P. 33.1(a)(1)(A).

All of the photographs of which appellant complains show Ruiz's neck, arms, face, eyes, and the side of her head.  The State offered the different sets of photographs to show the severity of the wounds inflicted by appellant based upon how they appeared at different points in time.  We view these photographs in light of the analysis set forth by the Texas Court of Criminal Appeals in Williams, 958 S.W.2d at 196 and Rule 403.  There were six photographs in the original series and then a total of ten photographs in the second and third series.  The record before this Court demonstrates that the photographs are black and white and do not depict any gruesome scenes.  A review of the record demonstrates that the amount of time spent offering and discussing these photographs did not unduly delay the trial.  Although appellant is correct when he points out that many of the photographs are of the same area of Ruiz's body, they do not demonstrate the same degree of injury, as they were taken at different times.  This is a factor the jury could use in determining the amount of force appellant used in strangling Ruiz.  Likewise, the photographs of the bite marks at different times demonstrates the apparent anger of appellant at the time of the assault by the lasting imprint of his teeth on Ruiz's arm and head.  This evidence goes directly to the totality of the circumstances of the assault.  See  Blain, 647 S.W.2d at 294.  All in all, we cannot say that the probative value of these exhibits is substantially outweighed by the prejudicial impact of these exhibits on the jury.  See Gallo, 239 S.W.3d at 764. Therefore, the trial court's decision to admit the photographs did not fall outside the zone of reasonable disagreement.  See Montgomery, 810 S.W.2d at 391.  Accordingly,

the trial court did not abuse its discretion in admitting the photographs, and appellant's second issue is overruled.  See id.

## Improper Argument

Appellant's last issue contends that the State engaged in an improper jury argument during the punishment phase of the trial.  The argument in question centered upon testimony elicited by appellant from his stepmother.  The essence of the testimony was that appellant's father had a very difficult time with appellant's prior criminal conviction.  Appellant's father had several heart attacks, had to have a pacemaker put in, and died within a few months of appellant's latest arrest.  Appellant did not mention the testimony during his final argument on punishment.  However, during the State's closing argument the following statement was made:

> I felt bad for the stepmother because you know who did that to her?  He did.  Can you imagine that?  You know who did that to his father?  You shouldn't feel bad for him because his father died while he was in jail for a second felony crime.  You should hold him responsible for that.  He did that to his stepmother, he did that to his father.

At that time, appellant objected saying, "Judge, that's improper, I object."  The trial court then overruled the objection without comment.  The State did not further refer to the testimony during closing argument.

Appellant now contends that the argument was improper because the argument was manifestly improper and did not fall within any of the recognized areas for proper jury argument.  Appellant also contends that the argument was an attempt to accuse appellant of the extraneous offense of homicide against his father.

11

Appellant has two manifest problems with his analysis of the alleged improper argument. First, the objection lodged was nothing more than a general objection and may not be sufficient to preserve error for appeal. See TEX. R. APP. P. 33.1(a)(1)(A); Buchanan v. State, 207 S.W.3d 772, 775 (Tex.Crim.App. 2006). If the legal basis for the objection is obvious to the trial court and to opposing counsel, then a general objection may preserve error. Id. Therefore, if we assume the trial court understood the objection to be addressing the fact that the argument did not go to one of the four recognized areas of proper jury argument[6] as set forth in Gallo, 239 S.W.3d at 767, then we have a situation where the issue on appeal does not comport with the objection made at trial. Dixon v. State, 2 S.W.3d 263, 273 (Tex.Crim.App. 1999) (op. on reh'g). This is because his complaint before this Court is that the argument attempted to charge appellant with an extraneous offense.

The result is that either appellant made a general objection that did not preserve anything for appeal, Buchanan, 207 S.W.3d at 775, or appellant's current complaint does not comport with the objection at trial and nothing is preserved for appeal. Dixon, 2 S.W.3d at 273. Under either scenario, we overrule appellant's third issue.

---

[6] 1) summation of the evidence; 2) reasonable deductions from the evidence; 3) answer to arguments of opposing counsel; and 4) pleas for law enforcement. Even if appellant's complaint regarding proper jury argument was preserved, we note that the State's argument referred to evidence appellant himself elicited from his stepmother. The State then made a plea for law enforcement based on this evidence. Gallo, 239 S.W.3d at 767.

Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


                                        Mackey K. Hancock
                                              Justice



Do not publish.