# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
## NO. 02-10-00035-CR


CLINT CHAD JONES                                                 APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellant Clint Chad Jones pleaded guilty to aggravated robbery with a deadly weapon, and a jury assessed his punishment at ninety-nine years' confinement. Appellant contends in five points that the jury should not have considered an extraneous capital murder offense in assessing his punishment because the State failed to prove the offense beyond a reasonable doubt, that

---

[1]*See* Tex. R. App. P. 47.4.

the trial court abused its discretion by overruling his objections to certain testimony and exhibits, and that the trial court erred by ordering that his sentence run consecutively to his sentence from a prior conviction. We affirm.

## II. Background

Appellant pleaded guilty to robbing a game room in Arlington, Texas. During the punishment phase of the trial, the State presented evidence of that aggravated robbery and Appellant's involvement in the kidnap and murder of his girlfriend, Charlee Cobb.

John Borland testified that he was working the overnight shift at Kasey's Korner in Arlington on November 22, 2007 (Thanksgiving Day). In the early morning hours, Carmen Brown, a woman Borland recognized as a customer, approached the door, and Borland unlocked the door for her to enter. Borland testified that Brown held the door open and that Appellant walked through the door carrying a sawed-off shotgun. Appellant took between four and five thousand dollars from the safe and a handgun before he and Brown left the game room. The manager of Kasey's Korner, Joe Davis, testified that a woman named Tracy Gandar later approached him and told him she knew who had robbed the game room. Law enforcement personnel subsequently interviewed Gandar.

Gandar testified that she lived in James Keisel's house at 125 East Cober Drive in November 2007. Appellant lived there for about a week near

2

Thanksgiving, and Brown and Cobb moved in at the same time. Gandar believed that Appellant was dating both women.

Gandar testified that Appellant and Brown left the house for a while on Thanksgiving morning and that they discussed the robbery they had committed when they returned. Gandar further testified that Appellant was upset with Cobb later that day and walked through the house with a gun in one hand and a hatchet in the other. Gandar also testified that Appellant hog-tied Cobb with duct tape in the living room, put a sock in her mouth, and put her into the trunk of the blue Honda he was driving, saying that he had to kill her because she knew too much about the game room robbery. Gandar said that Cobb kicked her way out of the trunk and made her way back into the house. Cobb had taken the duct tape off and was no longer bound, but Appellant put Cobb back into the blue Honda, this time in the passenger seat. Gandar testified that Appellant said he was taking Cobb to her brother's house, and he drove away with Cobb near midnight.

Appellant returned between two and three hours later and told Gandar that he "had to do it." Gandar asked Appellant if he had killed Cobb, and he said that he had but not to judge him. The next day, Gandar left the house and went to the game room Appellant had robbed. She told Davis who had robbed the game room, and she thereafter cooperated with the authorities.

Gandar admitted that she was in jail for a misdemeanor at the time of trial, but she said that she did not have any agreements with the State relating to her

3

testimony. On cross-examination, Gandar admitted that she did not tell the detective who interviewed her that Appellant had walked through the house with a gun and a hatchet or that he had confessed to her, but she testified that she was initially in shock and that her memory had become clearer over time.

The jury also heard testimony that Grand Prairie police officers conducted surveillance at the Cober Drive house two days after the robbery and observed Appellant drive the blue Honda (which had been reported stolen) toward the house and park in the driveway. When the officers approached, Appellant resisted but was arrested and placed in a patrol car. Because the officers had information about Cobb's abduction, Sergeant John Shaw forcibly entered the residence to look for her.[2] Cobb was not in the house, but Sergeant Shaw did recover a sawed-off shotgun. Sergeant Gary Newton looked in the trunk of the blue Honda. Cobb was not in the trunk, but there was a strip of duct tape in the trunk "that look[ed] like it had been wrapped around something and pulled off." The duct tape also had hair and leaves on it. Also in the trunk were pieces of a woman's earrings.

Donald Summons lives near a field in Dallas that is less than a ten-minute drive from the Cober Drive house. He testified that he called 9-1-1 on December 8, 2007, after a neighbor's dog found a decomposing human skull in the field. Crime scene investigators searched the field and recovered a large number of

---

[2]Keisel initially refused to allow the officers inside the house.

4

human bones, a knife that had been placed inside a nearby abandoned car, and several items of women's clothing. One of the clothing items had visible duct tape residue on it. The investigators also recovered several sections of duct tape; they were wrapped in a circular fashion and were consistent with having been wrapped around a woman's head.

Dr. Jill Urban, a deputy medical examiner for Dallas County, testified that she conducted an autopsy of Cobb's remains.[3] Dr. Urban testified that the cause of death was homicidal violence. On cross-examination, Dr. Urban testified that she could not give a precise date of death but that a November 22, 2007 date of death was consistent with her findings.

Detective Paul Ellzey is a homicide detective with the Dallas Police Department. He testified that the knife recovered from the abandoned car near Cobb's body had human blood on it and that it was from a butcher block set at Keisel's house on Cober Drive. By interviewing Keisel, Detective Ellzey confirmed that the knife was the same brand as that at Keisel's house and that Keisel's knife set was missing one knife. Keisel was initially a suspect in Cobb's murder but identified the missing knife as his. Through his investigation, Detective Ellzey confirmed that Cobb was last seen alive when she left Keisel's house with Appellant.

---

[3]Appellant stipulated that the remains were Cobb's.

5

### III. Punishment-Phase Extraneous Offense Evidence

Appellant contends in his first point that the State failed to prove the extraneous offense of capital murder beyond a reasonable doubt.

## A. Applicable Law

The admissibility of evidence at punishment is guided largely by article 37.07, section 3 of the Texas Code of Criminal Procedure. *Haley v. State*, 173 S.W.3d 510, 513 (Tex. Crim. App. 2005); *see* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2010). Under that section, the prosecution may offer evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt to have been committed by the defendant or for which he could be held criminally responsible. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1); *Haley*, 173 S.W.3d at 515. "Unlike the guilt-innocence phase, the question at punishment is not whether the defendant has committed a crime, but instead what sentence should be assessed." *Haley*, 173 S.W.3d at 515 (citing *Sunbury v. State*, 88 S.W.3d 229, 234 (Tex. Crim. App. 2002), and *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). "Whereas the guilt-innocence stage requires the jury to find the defendant guilty beyond a reasonable doubt of each element of the offense, the punishment phase requires the jury only find that these prior acts are attributable to the defendant beyond a reasonable doubt." *Id.* (citing *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999)).

While the trial court makes a threshold determination of whether the jury could rationally find beyond a reasonable doubt that an offense or bad act was

committed, the jury actually decides if the State met its burden of proof. *Mitchell v. State*, 931 S.W.2d 950, 953–54 (Tex. Crim. App. 1996); *Nanez v. State*, 179 S.W.3d 149, 151–52 (Tex. App.—Amarillo 2005, no pet.). "Before the jury can consider this evidence in assessing punishment, it must be satisfied beyond a reasonable doubt that the acts are attributable to the defendant." *Haley*, 173 S.W.3d at 515. Thus, when an appellant complains on appeal of the sufficiency of the evidence of an extraneous offense at the punishment phase, the complaint is not truly about sufficiency. *See Malpica v. State*, 108 S.W.3d 374, 378–79 (Tex. App.—Tyler 2003, no pet.); *see also Moody v. State*, No. 02-06-00362-CR, 2007 WL 3120705, at *2 (Tex. App.—Fort Worth Oct. 25, 2007, no pet.) (mem. op., not designated for publication). Rather, the complaint goes to the admission of the evidence. *Malpica*, 108 S.W.3d at 378–79. The trial court is deemed the sole arbiter on the threshold issue of admissibility of relevant evidence during the punishment phase of a trial, and its decision is reviewed under an abuse of discretion standard. *Mitchell*, 931 S.W.2d at 953. We thus construe Appellant's complaint as a challenge to the admission of the extraneous offense evidence, and we will examine the extraneous offense evidence to decide whether the trial court abused its discretion by determining that there is evidence upon which a fact finder could find beyond a reasonable doubt that the extraneous offense was attributable to Appellant. *See Arzaga v. State*, 86 S.W.3d 767, 781 (Tex. App.—El Paso 2002, no pet.); *Wilson v. State*, 15 S.W.3d 544, 549 (Tex. App.—Dallas 1999, pet. ref'd); *see also Moody*, 2007 WL 3120705, at *2. A trial court does not

abuse its discretion as long as the decision to admit or to exclude the evidence is within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (op. on reh'g); *see Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1200 (1997).

## B. Discussion

Appellant points to the testimony by Dr. Urban that she believed Cobb died as a result of homicidal violence, arguing that her testimony is "ambiguous and not definite," that Dr. Urban could not determine the cause of death due to the decomposition of the body, and that there was no affirmative link to Appellant. The court of criminal appeals has held, however, that article 37.07's proof beyond a reasonable doubt requirement does not require the offering party to necessarily prove that the act was a criminal act or that the defendant committed a crime. *Haley*, 173 S.W.3d at 515. Rather than proof of the elements of a crime necessary for a finding of guilt, article 37.07 requires proof beyond a reasonable doubt that the defendant was involved in the act itself. *Id.*

In the light most favorable to the prosecution, the evidence revealed that Appellant had lived at Keisel's house on Cober Drive with Keisel, Gandar, Brown, and Cobb for about a week near Thanksgiving; that Appellant had threatened Cobb with a gun and hatchet; that Appellant had hog-tied Cobb with duct tape and had put her in the trunk of his stolen car; that Appellant left the Cober Drive house with Cobb around midnight on Thanksgiving; that Cobb was not thereafter seen alive; that Appellant confessed to Gandar that he had killed Cobb; that duct

8

tape with hair and leaf particles was recovered from the car's trunk; that Cobb's body, duct tape consistent with being wrapped around a woman's head, and a knife from the Cober Drive house were recovered from a field less than a ten-minute drive from the Cober Drive house; that Cobb died as a result of homicidal violence; and that although the exact time of Cobb's death could not be determined, death on Thanksgiving was consistent with the medical examiner's findings. Based on this evidence, we hold that the trial court did not abuse its discretion by determining that a fact finder could find beyond a reasonable doubt that Cobb's murder was attributable to Appellant. *See id.* ("[T]he punishment phase requires the jury [to] find that these prior acts are attributable to the defendant beyond a reasonable doubt."); *Franks v. State*, No. 01-07-00253-CR, 2008 WL 4427665, at *2 (Tex. App.—Houston [1st Dist.] Oct. 2, 2008, no pet.) (mem. op., not designated for publication). We overrule Appellant's first point.

## IV. Admission of Evidence

Appellant contends in his second, third, and fourth points that the trial court abused its discretion by overruling his objections to certain evidence admitted during the punishment phase of his trial. The State responds that Appellant failed to preserve his complaints for appellate review.

### A. Applicable Law

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request,

9

objection, or motion. Tex. R. App. P. 33.1(a)(1); *Layton v. State*, 280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009).

## B. Rule 403 Objections to Photographs of the Deceased

Appellant argues in his second point that the trial court erred by overruling his rule 403 objection to photographs of Cobb's remains. During the State's direct examination of crime scene supervisor Andra Lewis-Krick, the State offered, in bulk, forty-four photographs taken by crime scene investigators as they searched the field where Cobb's remains were found. Appellant lodged, and the trial court overruled, a rule 403 objection to the photographs when the State offered them.

Appellant argues that the trial court "did not conduct a balancing test as is required by Rule 403 and allowed the photographs to be admitted." Once a party asserts a rule 403 objection, the trial court must engage in the balancing test required by that rule. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997); *see also Alami v. State*, 333 S.W.3d 881, 889 (Tex. App.—Fort Worth 2011, no pet.). "However, a trial judge is not required to sua sponte place any

10

findings he makes or conclusions he draws when engaging in this test into the record." *Williams*, 958 S.W.2d at 195. "Rather, a judge is presumed to engage in the required balancing test once Rule 403 is invoked," and the trial court's failure to conduct the balancing test on the record does not imply otherwise. *Id.* at 195–96. Here, although the trial court did not state on the record that it had conducted the rule 403 balancing test, it was not required to do so. *See id.* We therefore overrule this portion of Appellant's second point.

Appellant also contends in his second point that the trial court abused its discretion by admitting the forty-four photographs because they "did no more than to inflame the jury in sympathy for the State." We have reviewed each of the complained-of photographs, and only State's Exhibit 101 is potentially inflammatory. It depicts the human skull found in the field near Cobb's other remains. However, the identical photograph was admitted without objection from Appellant as State's Exhibit 126. Moreover, Appellant stated that he had no objection when the State offered State's Exhibits 149 through 163, which are photographs taken by the medical examiner during the autopsy of Cobb's remains. By failing to object when similar evidence was offered, Appellant failed to preserve the remainder of his second point for appellate review, and we overrule it. *See Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

## C. Rule 403 Objection to Clothing Items

Appellant contends in his third point that the trial court erred by overruling his rule 403 objection to items of Cobb's clothing. However, Appellant objected only to the relevance of these exhibits at trial and did not assert a rule 403 objection when they were offered. Appellant therefore failed to preserve his third point for appellate review, and we overrule it. *See Montgomery*, 810 S.W.2d at 389 (holding that relevance objection does not preserve complaint that danger of unfair prejudice outweighed relevance); *Chase v. State*, Nos. 02-06-00063-CR, 02-06-00064-CR, 2007 WL 866221, at *5 (Tex. App.—Fort Worth Mar. 22, 2007, pet. ref'd) (mem. op., not designated for publication) (holding same).

## D. Relevance Objection to Testimony by Detective Ellzey

Appellant argues in his fourth point that the trial court erred by overruling his relevance objection to Detective Ellzey's testimony concerning the knife recovered near Cobb's remains. In summary, Detective Ellzey testified that the knife marked as State's Exhibit 136 was recovered from an abandoned car near Cobb's remains, that he later identified the knife by speaking with Keisel at his residence on Cober Drive, that the knife was the same brand as the knife set at Keisel's residence, and that one of the knives was missing from Keisel's set. After this testimony by Detective Ellzey and when the State offered the knife into evidence, Appellant asked several questions of Detective Ellzey on voir dire. Appellant then objected to the admissibility of the knife; Appellant did not, however, object to any of Detective Ellzey's testimony about the knife or ask that

it be stricken.  Because Appellant did not object at trial to Detective Ellzey's testimony about the knife, he cannot complain on appeal that the trial court abused its discretion by permitting Detective Ellzey to testify about the knife.  *See* Tex. R. App. P. 33.1(a); *Layton*, 280 S.W.3d at 238–39; *Mendez*, 138 S.W.3d at 341.  We therefore overrule Appellant's fourth point.

### V.  Stacked Sentence

Appellant contends in his fifth point that the trial court erred by ordering that his sentence in this case run consecutively to the remainder of his sentence from a prior conviction in Stephens County.[4]  Specifically, Appellant contends that the trial court "failed to include the proper language in its Order when it stacked the Appellant's sentence."

The court of criminal appeals has held that a cumulation order should ordinarily set forth five things:  "(1) the trial court number of the prior conviction; (2) the correct name of the court where the prior conviction was taken; (3) the date of the prior conviction; (4) the term of years of the prior conviction; and (5) the nature of the prior conviction."  *Ward v. State*, 523 S.W.2d 681, 682 (Tex. Crim. App. 1975).  "It is well settled, however, that the inclusion of all elements recommended above is not mandatory."  *Williams v. State*, 675 S.W.2d 754, 764 (Tex. Crim. App. 1984) (op. on reh'g).  A "cumulation order will be upheld so long as the trial court's description of prior convictions is 'substantially and sufficiently

---

[4]Appellant was on parole from the Stephens County conviction at the time of the instant aggravated robbery.

13

specific' to give notice both to the defendant and to the Department of Corrections exactly which sentences the instant sentence is cumulated with." *Id.* (quoting *Ex parte Lewis*, 414 S.W.2d 682, 683 (Tex. Crim. App. 1967)). Indeed, the court of criminal appeals has upheld "[c]umulation orders which merely set out the cause number and the correct name of the trial court of the prior conviction." *Id.* And this is exactly what the judgment in the present case contained: the cause number of the prior conviction and the correct name of the court where the prior conviction occurred. Thus, the judgment contains sufficient information for Appellant and the department of criminal justice to know that the current sentence of ninety-nine years' confinement will commence immediately upon Appellant's completion of his remaining sentence for his prior conviction in Cause Number 28479 from the 90th District Court of Stephens County. *See id.* We therefore overrule Appellant's fifth point.

## VI. Conclusion

Having overruled each of Appellant's five points, we affirm the trial court's judgment.

PER CURIAM

PANEL: GARDNER, J.; LIVINGSTON, C.J.; and WALKER, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: October 13, 2011

14