

# NUMBER 13-19-00162-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

RICK EPHRAN JIMENEZ,                                              **Appellant,**

**v.**

THE STATE OF TEXAS,                                                  **Appellee.**

## On appeal from the 451st District Court
## of Kendall County, Texas.

# MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Longoria and Hinojosa
### Memorandum Opinion by Justice Longoria

Appellant Rick Ephran Jimenez pleaded guilty to burglary of a habitation, a second-degree felony. *See* TEX. PENAL CODE ANN. § 30.02. Jimenez also entered a plea of true to the use of a deadly weapon during the burglary, enhancing the offense to a first-degree felony. *See id.* § 30.02(d). The trial court sentenced him to fifty years'

imprisonment. By one issue on appeal, Jimenez argues that the trial court erred by admitting evidence extracted from his cell phone during the punishment phase. We affirm.

## I. BACKGROUND[1]

On April 3, 2017, Jimenez was indicted by a Kendall County grand jury for the burglary of a habitation owned by Jenks Boston on March 23, 2016. The indictment also alleged that Jimenez used or exhibited a deadly weapon—a knife—during the commission of the offense. *See id.* On June 1, 2018, the State filed a notice of intention to use extraneous offenses, listing five other burglaries of habitations that Jimenez committed in January and February of 2016.

On February 25, 2019, a jury was selected, and Jimenez pleaded not guilty. However, the next day, Jimenez changed his plea to guilty and entered a plea of true to using a deadly weapon during the burglary. The court proceeded to the punishment phase.

Boston testified that he spent the morning of March 23, 2016, working in his yard at his home in the City of Fair Oaks Ranch. At the time, his wife and children were not at home. At about mid-morning, Boston decided to shower and prepare for a meeting he had in San Antonio. When he dressed, he placed his handgun into a holster on his belt. As he walked out of his bedroom, Boston noticed a three-foot long iron stake used to post real estate signs laying on the couch. The stake's placement was unusual because Boston normally stored the stake in garage. As Boston walked towards the couch to investigate, he felt "a very severe blow from behind," he went down on the couch, and someone started to "punch and stab [him] very, very violently, very rapidly from behind."

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

As he turned to try to push his attacker away, Boston saw a knife. During the struggle, the attacker, later identified as Jimenez, also cut Boston's face.

As Boston continued fighting, he noticed another individual in his home, later identified as Samuel Lara. Both Lara and Jimenez turned to flee and ran out to the driveway. Boston pursued the two individuals, but by the time he reached his driveway, they were driving away in a car. Boston said he drew his gun and pointed it at the two individuals as he ran after them, but he did not fire the weapon. Boston considered shooting at the vehicle, but he "realized that there are children that live across the street. And in gun training, you're always supposed to think about what is beyond your weapon, and I chose at that point that the best thing to do was to focus—concentrate on the vehicle to give a description of it as much as possible."

As Boston watched Lara and Jimenez drive away, Boston realized he was standing in a puddle of blood. He called 911 while trying to put pressure on his wounds. Victor Vela, a physician who treated Boston, said Boston sustained "three pretty significant stab wounds to his upper right back and a less minor [sic] injury to the right side of his face." Vela agreed Boston sustained "a serious bodily injury."

City of Boerne Police Officer Douglas Meuth testified he answered a dispatch call from someone—later identified as Boston—saying he had been stabbed and mugged in his home. When Officer Meuth arrived at Boston's house, another officer was present and administering first aid to Boston. Kendall County Sherriff's Office Investigator James Whitt testified he pulled fingerprints from Boston's truck that were later identified as belonging to Jimenez. Whitt said he recovered a bloody kitchen knife which measured eleven inches

3

long, as well as the metal stake, which measured about forty-eight inches long. Whitt also testified about Jimenez's possible gang affiliation.

In the meantime, based on Boston's description of the car driven by Lara and Jimenez, police were able to locate and stop the vehicle driven by Lara. Lara briefly stopped but then drove off again at a high speed, approaching 100 miles per hour while travelling into the oncoming lane of traffic and on the shoulder of the road. Lara eventually crashed into another vehicle. Jimenez exited the passenger side of the car and ran down the highway but was apprehended by another police officer. Two cell phones were retrieved in Lara's vehicle: a black one and a white one.

While at the police station, Jimenez received a magistrate's warnings before giving a video-recorded statement to the police. *See* TEX. CODE CRIM. PROC. ANN. art. 15.17(a). In his statement, Jimenez admitted he and his friend entered Boston's house through the open garage door to steal from the house. When he heard a man's voice, Jimenez got a knife from the kitchen to intimidate the man. However, when Jimenez saw the man had a gun, he stabbed the man to prevent the man from shooting him. Jimenez said he and his friend were both afraid as they entered the house, and his friend brought the metal stake into the house to defend himself. Jimenez agreed with the police officers interviewing him that he could have left the house instead of stabbing Boston, but at the time everything happened "so fast." Jimenez said this was the first time he had ever been in this neighborhood.

The State called Tony Kobryn, a criminal investigator with the Bexar County Sheriff's Office, to testify concerning extraction reports that were performed on the white and black cell phones. During the first day of trial, the State represented to the trial court

4

that it was going to introduce an extraction report of the white cell phone, which the State believed belonged to Jimenez, but not the black phone, which the State asserted belonged to co-defendant Lara. The State further informed the court it would call an expert to testify about the information found on Jimenez's phone to show that he had committed extraneous burglaries together with Lara. Based on these representations, the trial court ruled that the white phone evidence would be admitted but the black phone would only be admissible for the limited purpose of showing that it was in Lara's vehicle. But during Kobryn's testimony, the State discovered that it had made a mistake concerning the ownership of the cell phones. When the State tried to offer State's Exhibit 83 as the report regarding the information pulled from the white phone, Jimenez objected and claimed that the report was actually pulled from the black phone.

Outside the presence of the jury and after some discussion, the State admitted that it had accidentally confused the identity of the phones and misrepresented on the first day of trial which cell phone belonged to Jimenez and which belonged to Lara. The State clarified that the extraction report that it was attempting to offer into evidence was from Jimenez's black cell phone. The State further clarified that it had no intention of introducing the information extracted from the white phone, which it now conceded belonged to Lara. Jimenez objected that the court had already ruled that the black phone would only be admissible for the limited purpose of showing that it was present in the getaway vehicle. The State responded: "Right. And, respectfully, I believe the spirit of that ruling was to ensure that the co-defendant's forensic analysis did not come in. This is not the co-defendant's forensic analysis. This is the defendant's forensic analysis of his cell phone." The trial court noted that the State's mix-up concerning the cell phones might be

5

confusing to the jury. Accordingly, the trial court announced that it would give the State an opportunity to clear up the confusion with the jury before ruling on the admissibility of the black phone's extraction report. The State proceeded to question Kobryn to show that the offered extraction report was actually from the black phone. Kobryn testified that the black phone had selfie-style photos of Jimenez. Additionally, Kobryn testified that the extraction report indicated that the owner of the black phone went by "Rick," which is Jimenez's given name.

After this testimony, the State re-offered State's Exhibit 83 into evidence. Jimenez objected based on the trial court's prior ruling concerning the admissibility of the black cell phone. Jimenez additionally raised objections under Rules 401, 402, 403, and 404(b) of the Texas Rules of Evidence, claiming that admitting the evidence would confuse the jury and that he had relied on the trial court's earlier ruling in the presentation of his case to the jury. *See* TEX. R. EVID. 401, 402, 403, 404(b). The trial court overruled Jimenez's objections and admitted State's Exhibit 83 concerning the forensic analysis of the black phone. Using data extracted from the black cell phone, the State tied Jimenez to other burglaries that had occurred in early 2016.

Kevin Meyers testified that his home was burglarized on January 6, 2016. A picture of a handgun stolen from his home was taken on the black phone on January 23, 2016. The phone also contained a video of the gun being shot.

Douglas Richardson testified that his home was burglarized on January 19, 2016. He said a gun, jewelry, ammunition, a computer, the keys to his truck, and watches, among other things, had been taken. The keys to his truck were recovered from Lara's vehicle. The black cell phone contained a photo of one of the ammunition bins taken from

6

Richardson's home. The phone also contained an image of a gun holster that Richardson identified as belonging to his wife.

Donald Harris testified that his home was burglarized on January 22, 2016. The black cell phone contained an image of a Walther .308 pistol that belonged to Harris.

Jennifer Butts testified that her home was burglarized on February 3, 2016. Pictures of her front door and front yard were taken on the black cell phone on February 3, 2016.

Tiffany and Brant Baudoin testified their home was burglarized on February 4, 2016. They testified that their home was thoroughly ransacked; among the items stolen was Brant's AR-15 rifle. The black cell phone contained an image that Brant recognized as his AR-15 because of the flashlight and laser it possessed.

Lastly, the State called Kathleen Gorsche. According to her testimony, her home was burglarized on February 4, 2016. Gorsche did not identify any of the items on the black cell phone as her stolen property. However, according to James Taylor, a detective with the Houston Police Department and an expert witness for the State, the Gorsche home was close to the Baudoin home. Taylor additionally testified that location data pulled from the black phone was consistent with the black phone being in the vicinity of the Gorsche home during the time it was burglarized. The cell phone data also was consistent with the black cell phone being in the vicinity of each of the respective homes during the above burglaries.

After a weeklong trial on punishment, the jury assessed punishment at fifty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice and

7

a $10,000 fine. The trial court pronounced sentence as assessed by the jury. This appeal followed.

## II. Admission of Evidence

In his sole issue, Jimenez argues that the trial court erred by admitting evidence extracted from the black cell phone.

## A. Standard of Review & Applicable Law

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *See Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "As long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009).

Evidence is relevant if it has any tendency to make a fact more or less probable than it would without the evidence and that fact is of consequence in determining the action. TEX. R. EVID. 401. Relevant evidence is generally admissible. *See id.* R. 402. However, a trial court may exclude relevant evidence if the evidence's "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* R. 403. Courts presume that the probative value of relevant evidence exceeds any potential danger of unfair prejudice until proven otherwise. *See Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (en banc) (op. on reh'g). A trial court's decision on a Rule 403 objection is rarely disturbed and is given an especially high level of deference. *See Robisheaux v. State*, 483 S.W.3d 205, 218 (Tex. App.—Austin 2016, pet. ref'd); *Freeman v. State*, 230 S.W.3d 392, 404–05 (Tex.

App.—Eastland 2007, pet. ref'd); *see also Garza v. State*, No. 13-17-00677-CR, 2018 WL 3655519, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 2, 2018, no pet.) (mem. op., not designated for publication); *see also United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007). When performing a Rule 403 analysis, the trial court

> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Once a Rule 403 objection is asserted, the trial court must engage in the balancing test required by that rule. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). "However, a trial judge is not required to sua sponte place any findings he makes or conclusions he draws when engaging in this test into the record." *Id.* Rather, a judge is presumed to engage in the required balancing test once Rule 403 is invoked, and the trial court's failure to conduct the balancing test on the record does not imply otherwise. *See id.* at 195–96; *see also Simmang v. State*, No. 03-11-00455-CR, 2013 WL 5272919, at *7 n.17 (Tex. App.—Austin Sept. 11, 2013, pet. ref'd) (mem. op., not designated for publication) ("[T]he trial court is not required to perform the Rule 403 balancing test on the record, and when the record is silent, appellate courts must presume that the trial court performed the required balancing test.").

If we find any error in the admission or exclusion of evidence, we must next decide if that error constituted reversible error. *See* TEX. R. APP. P. 44.2; *Proenza v. State*, 541

9

S.W.3d 786, 801 (Tex. Crim. App. 2017). "[N]onconstitutional error requires reversal only if it affects the substantial rights of the accused." *Proenza v. State*, 555 S.W.3d 389, 398 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). A nonconstitutional error affects the substantial rights of the accused if it had a substantial and injurious effect or influence in determining the verdict. *See Bell v. State*, 566 S.W.3d 398, 408 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

**B. Analysis**

According to Jimenez, "[w]hen the balancing test is conducted, especially when considering the confusion and prejudice caused by the State telling the jury one thing on one day about the phones (including a limiting instruction by the trial court), but then telling the jury the opposite on another day," the balancing test reveals that the probative value of the cell phone was substantially outweighed by the prejudice and confusion from the cell phone evidence. We disagree.

Looking at the Rule 403 balancing test factors, we cannot conclude that the trial court abused its discretion in admitting the cell phone evidence. *See Rhomer*, 569 S.W.3d at 669. First, the cell phone evidence helped tie Jimenez not only to the Boston burglary but to six other burglaries. And an individual's history of violating the law is certainly relevant when assessing an appropriate sentence. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *Fowler v. State*, 126 S.W.3d 307, 310 (Tex. App.—Beaumont 2004, no pet.). Thus, the trial court could have reasonably concluded that the cell phone evidence's inherent probative value was high. *See Gigliobianco*, 210 S.W.3d at 641–42. Likewise, the State's need for the cell phone evidence was great because there was no other evidence that tied Jimenez to the other burglaries, which was a major part of the State's

10

case on punishment. Thus, the trial court could have reasonably concluded that the evidence was not repetitive and that the State needed the cell phone evidence to more appropriately assess punishment. *See id.*

It is true, as the trial court noted, that the State's initial representations concerning the ownership of the cell phones might have confused the jury, but it was reasonable for the trial court to conclude that the State cleared up any confusion on the topic by confronting the jury directly about the confusion and by introducing testimony from Kobryn to clarify who owned which cell phone. Also, Jimenez does not explain how the cell phone evidence might have influenced the jury in some irrational way or suggested a decision on an improper basis. *See id.* Ultimately, Jimenez fails to overcome the presumption that the probative value of the cell phone evidence outweighs any potential prejudicial value. *See Montgomery*, 810 S.W.2d at 389. Therefore, the trial court's decision to admit the cell phone evidence was not an abuse of discretion. *See Rhomer*, 569 S.W.3d at 669. We overrule Jimenez's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
10th day of December, 2020.

11