AFFIRMED and Opinion Filed May 31, 2024



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00951-CR

**JAIME JARAMILLO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F22-00084**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Smith
Opinion by Justice Molberg

A jury found appellant Jaime Jaramillo guilty of capital murder, and the trial court sentenced him to life in prison without the possibility of parole.[1] Appellant presents six issues in this appeal: whether (1) the evidence is legally sufficient to support the jury's guilty verdict, (2) the trial court abused its discretion in denying appellant's motion for mistrial following the prosecutor asking a leading question, (3) the trial court abused its discretion in allowing the State to replay videos from

---

[1] Because the State did not seek the death penalty in this case, appellant's sentence of life without parole was mandatory. *See* TEX. PENAL CODE § 12.31(a)(2).

Office Richard Houston's body-worn and patrol-car cameras, (4) the trial court abused its discretion in admitting duplicative photographs of the interior of appellant's truck, (5) the trial court abused its discretion in overruling appellant's request for a mistrial after the State argued based on facts not in evidence, and (6) the trial court abused its discretion in overruling appellant's request for a mistrial following the State's argument "based on feelings and not evidence." For the reasons explained below, we affirm in this memorandum opinion.

## Background

Appellant was meeting with his coworker, Jazmin, in the parking lot of an Albertson's grocery store in Mesquite to discuss workplace rumors about their relationship when his wife, Juventina, and his daughter, Yatziry, arrived in Yatziry's white truck. Appellant and Jazmin drove off in his red truck but returned when Jazmin had to leave to take care of her son; she exited the truck and got into her black SUV. Juventina and Yatziry parked behind Jazmin's SUV and began banging on its windows. Jazmin called the police. Yatziry testified appellant left, drove home, and then returned and parked two spaces to the left of Jazmin's vehicle. Yatziry was worried he had retrieved a gun from their home. Appellant exited his truck and was standing between his vehicle and Jazmin's when he told Juventina, "It's over." Juventina screamed at him. Officer Richard Houston II arrived in a police truck, wearing his police uniform. Yatziry said when appellant saw the officer arrive, appellant returned to his truck and began reversing the vehicle to leave.

–2–

Officer Houston ran up to the truck and yelled "hey" to get appellant to stop. Appellant stopped and then pulled the truck forward into the parking space again. Officer Houston was still standing behind appellant's red truck when Yatziry said she heard five or six gunshots. She heard the officer yell out in pain, and he clutched his right side and fell. Yatziry ran towards her truck and saw appellant with something black near his stomach that she believed to be a gun. Yatziry approached the officer and saw he was having difficulty breathing and she tried to raise his neck; she told him she was going to get him help. Other police officers arrived, and Yatziry said at that point Juventina had appellant's gun. Juventina dropped the weapon after being ordered to do so.

Defense counsel questioned Yatziry about whether she told him in his office that she did not believe Officer Houston was wearing a police uniform during the incident, and she denied ever telling him that.

The State admitted two videos as State's Exhibit 5. The first was Officer Houston's in-car camera footage. It depicted the officer arriving at the scene and parking facing Yatziry's white truck. Officer Houston can be seen exiting the vehicle and talking to Yatziry and Juventina before he sees appellant's truck backing up. He quickly moves to the rear and left of the truck, taps the rear left taillight area and peers around the left side of the truck towards the driver, and appellant pulls back in. Officer Houston is standing left rear of the truck as he is shot. Appellant is obscured by his truck and is not visible on camera until he fires a self-inflicted shot

–3–

and falls forward into view of the camera. The second video was from Officer Houston's body camera. It depicts the same event from the perspective of the officer. As pertinent here, once appellant pulled back into the parking space and Officer Houston is standing to the left rear of appellant's truck, the video shows appellant opening the door of the truck, turning to face Officer Houston, and aiming his gun at Officer Houston and shooting him.

Jazmin Hernandez testified through an interpreter. She had worked with appellant for about three years. She said the purpose of meeting with appellant after work on the day of the incident was to address work gossip about their relationship; she said they were going to talk to her husband and appellant's wife "so that the rumors could calm down." When appellant arrived at the parking lot, she got into his truck so they could discuss the situation, but Juventina arrived shortly afterwards and began striking the truck's windows with her phone. Juventina was shouting at appellant to lower the windows. Appellant and Jazmin drove off to avoid Juventina and then returned to drop off Jazmin because she needed to take care of her son. Jazmin got into her car, and Juventina and Yatziry approached her vehicle; she was scared so she called family and the police. Appellant returned in his truck and parked next to Jazmin's car and got out. He was outside of his truck, standing on the left side of the rear of her vehicle, and Juventina and Yatziry were standing further away by Yatziry's white truck. Jazmin rolled down the window and told them the police were coming, and she said Juventina must have heard her because she responded.

—4—

She also told appellant "not to do anything to them." She said appellant was standing closer than Juventina and she knew him to have normal hearing. About three to five minutes later, Jazmin became aware the police had arrived when she saw a patrol car's flashing lights. At that point, she saw appellant drink something from a thermos and then walk to the back of his truck to leave. She saw Juventina and Yatziry walk towards the police officer.

On cross-examination, Jazmin said she had also called her husband Hugo while she was in her car and told him what was going on. She said Hugo called appellant at that point. Eventually, she said Hugo showed up at the scene but she did not know he was coming until she saw him there. Jazmin also stated appellant's back was to the arriving police vehicle because he was facing his truck. She said she did not see whether appellant turned around or acknowledged having seen the police. Jazmin agreed appellant used drops in his eyes because they "stung a lot" but also said appellant was able to see his wife and daughter from across the street when he asked her if she really wanted to return to her car.

Sergeant Jeffrey Smith testified he heard on dispatch that two vehicles were involved in a disturbance in the parking lot, and he heard Officer Houston was dispatched. As he was driving to the scene, he heard there were reports an officer was down. He was the first officer to arrive after Officer Houston. Officer Houston was not responsive and Sergeant Smith said he did not see any signs of life. Sergeant Smith said Officer Houston was wearing his full Mesquite Police Department

uniform and observed his badge was prominently displayed on his chest with nothing obscuring it. He looked for entry and exit wounds to stop the bleeding and a Balch Springs Police Department officer started CPR. They did not wait for an ambulance but put Officer Houston in the back of one of their vehicles to get him to the hospital as soon as possible.

Officer Nehemias Iglesias testified he rode with appellant to the hospital. He said appellant had a gunshot wound to the head, and he later learned it was self-inflicted. Officer Iglesias said he observed at the scene that Officer Houston's patrol vehicle's overhead lights were on and activated from the front, the back, and the sides.

Detective Michael Smith testified, among other things, that he reviewed Officer Houston's in-car and body-worn camera videos. He said, based on that review, he believed Officer Houston ultimately fired his weapon four times but that none of the shots struck appellant. One of the shots struck the rear of appellant's truck and it was never determined what the other three shots struck. Detective Smith said appellant also fired four shots. He said he slowed down Officer Houston's videos to determine the sequence of firing and testified appellant shot Officer Houston and himself before Officer Houston was even able to unholster his weapon to return fire. Detective Smith testified Officer Houston's overhead lights could be seen on video reflecting off the back of appellant's truck. Detective Smith also reviewed the phone records of Hugo—Jazmin's husband—and determined he spoke

with appellant for close to two minutes about one or two minutes prior to Office Houston arriving on the scene.

Detective Smith said when Officer Houston arrived at Baylor University Medical Center at Dallas, he was nonresponsive, he had no pulse, and he had no brain activity. The hospital's medical records reflect that, after taking some resuscitative measures, the doctors treating him eventually determined Officer Houston's injuries were not survivable and his time of death was called. The Chief Medical Examiner of Dallas County, Dr. Jeffrey Barnard, testified that Officer Houston died as a result of injuries sustained from gunshot wounds to the trunk and extremity. Appellant recovered from his self-inflicted gunshot.

After hearing closing arguments, the jury found appellant guilty of capital murder, and he was sentenced to life without parole. This appeal followed.

## Discussion

*A. Sufficiency of the evidence*

In assessing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, the trier of fact may resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* When the record supports

–7–

conflicting inferences, we presume the jury resolved the conflicts in favor of the verdict and defer to that determination. *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012). Circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Viewing the evidence in the light most favorable to the verdict requires us to consider all the evidence admitted at trial, including improperly admitted evidence. *Starks v. State*, 684 S.W.3d 868, 872 (Tex. App.—Eastland 2024, no pet.). We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the trier of fact. *Id.* We consider the cumulative force of the evidence in determining whether it is sufficient to support a conviction. *Garcia v. State*, 667 S.W.3d 756, 761–62 (Tex. Crim. App. 2023).

A person commits capital murder if the person commits murder as defined under penal code section 19.02(b)(1) and the person murders a peace officer who is acting in the lawful discharge of an official duty and who the person knows is a peace officer. TEX. PENAL CODE § 19.03(a)(1).

Appellant does not dispute that the evidence showed he murdered Officer Houston, who was a peace officer acting in the lawful discharge of an official duty. Instead, appellant argues the evidence failed to show he knew Officer Houston was a peace officer when he shot him. He points to evidence that appellant "was facing a myriad of issues at the same time," including his angry wife, daughter, and

girlfriend at the scene, and that his girlfriend was calling her husband. He argues his back was to Officer Houston and the police vehicle and there was no evidence Officer Houston ever identified himself to appellant.

Applying the standard described above, we reject appellant's contention. Viewing the evidence in the light most favorable to the verdict, we conclude sufficient evidence supports the jury's verdict. As stated above, it is the province of the jury to weigh evidence and draw reasonable inferences from basic facts to ultimate facts. Pertinent basic facts here include the following: Jazmin rolled down her window and told everyone the police were coming; Officer Houston arrived in his patrol car with its emergency lights activated; just after he arrived, appellant got back in his truck and began reversing to leave; Officer Houston, who was in his full police uniform, stood behind and to the left of appellant's truck to get appellant to stop; appellant stopped and pulled back into the parking space; and appellant exited his truck, faced Officer Houston, and shot and killed Officer Houston. From this, the jury could have reasonably inferred that appellant knew the police were coming; he began to leave the scene because he saw Officer Houston arriving in his patrol vehicle with its lights activated; he stopped reversing his truck because he saw Officer Houston behind it; and ultimately, he knew Officer Houston was a peace officer when he shot him. We overrule appellant's first issue.

## B. *Request for mistrial*

In his second issue, appellant argues the trial court abused its discretion when it denied his motion for mistrial after the State asked a leading question. The prosecutor questioned Jazmin as follows:

> Prosecutor: The defendant and your husband know each other, don't they?
>
> Jazmin: Yes.
>
> Prosecutor: They are not strangers?
>
> Jazmin: No.
>
> Prosecutor: They played soccer together?
>
> Jazmin: Yes.
>
> Prosecutor: They hung out together?
>
> Jazmin: Yes.
>
> Prosecutor: He knows what your husband looks like?
>
> Jazmin: Yes.
>
> Prosecutor: And Mr. Peale asked you a question about you sitting in the car. You hadn't got out of the car when Hugo got there, that -- you know, all of that stuff. The truth is you sat in the car for a long time after the shooting, didn't you?
>
> Jazmin: Yes.
>
> Prosecutor: Like a long, long time?
>
> Jazmin: Yes.

Prosecutor: Because no one knew you were in the car until Hugo said, my wife is in the car.

Defense counsel: Objection, Your Honor. Leading.

Trial court: Sustained. Rephrase your question.

Defense counsel: Respectfully request to strike that. Respectfully request a mistrial.

Trial court: The jury will be instructed to disregard the last statement. Mistrial will be denied.

Defense counsel: Thank you.

Whether an error requires a mistrial must be determined by the particular facts of the case. *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016). A mistrial is an extreme remedy that should be granted only if residual prejudice remains after applying less drastic alternatives, including instructing the jury to consider as evidence only the testimony and exhibits admitted through witnesses on the stand, and, if an instruction alone does not sufficiently cure the problem, questioning the jury about the extent of any prejudice. *Id.* As we have stated previously:

> The asking of an improper question will seldom call for a mistrial, because, in most cases, any harm can be cured by an instruction to disregard. A mistrial is required only when the improper question is clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors. A trial court's denial of a mistrial is reviewed under an abuse of discretion standard.

*Beans v. State*, No. 05-12-00913-CR, 2014 WL 357340, at \*3 (Tex. App.—Dallas Jan. 31, 2014, no pet.) (mem. op.) (quoting *Ladd v. State*, 3. S.W.3d 547, 567 (Tex. Crim. App. 1999)) (internal citations omitted).

Assuming without deciding the State's question was improper, we conclude the trial court did not abuse its discretion in denying appellant's motion for mistrial. The question was not of such a character that it was irretrievably prejudicial. Additionally, defense counsel had already elicited testimony on the same subject when he questioned Jazmin as follows:

> And when [your husband] showed up, you were still in your car, correct?
>
> Jazmin: Yes.
>
> Defense counsel: The police hadn't talked to you, nobody had even talked to you yet. You were in your car; is that correct?
>
> Jazmin: Yes, that's correct.

Moreover, the trial court sustained appellant's objection and instructed the jury to disregard the question. *See Dies v. State*, 649 S.W.3d 273, 286 (Tex. App.—Dallas 2022, pet. ref'd) ("The jury is presumed to have followed the court's instruction."). Given all of this, we conclude the trial court did not abuse its discretion in denying appellant's motion for mistrial. Appellant's second issue is overruled.

## C. *Replay of State's Exhibit 5*

Appellant next argues the trial court abused its discretion in allowing part of Officer Houston's in-car camera and his body-worn camera videos to be replayed

for the jury. During the testimony of Detective Smith, the State sought to republish the in-car video. Smith was questioned whether he had reviewed Officer Houston's in-car camera video and whether he slowed down the video to see the sequence of firing. The trial prosecutor stated he intended to republish a short portion of the footage. Defense counsel objected:

> Your Honor, we are going to object as to cumulative. It's already been played. The jury has had an opportunity to see it on two different occasions. We are going to object to the cumulative nature, and asking the witness to testify about something that they have seen and their impressions regarding what they have seen on it, which invades the province of the jury. They can make their own conclusions from the evidence.

The State responded:

> Judge, the difference between this is that we are slowing down the video to about one-quarter time, so that you can see the clear sequence of shots. So this is not cumulative in any way.

The trial court overruled appellant's objection. The State then replayed fifteen seconds of the exhibit and questioned the detective:

> Prosecutor: From the slowed-down video, does Officer Houston get off -- does he even get his holster -- or his gun out of his holster --
>
> Detective: No, sir.
>
> Prosecutor: -- before Jaime Jaramillo shot himself?
>
> Detective: No.
>
> Prosecutor: Jaime Jaramillo is already on the ground by the time Officer Houston begins his series of fire; is that correct?
>
> Detective: Yes, that's correct.

Prosecutor: I want to go back. Can you see right here – I don't know if you can see it on these TVs. But can you see the light reflecting off of the back of the defendant's truck from Officer Houston's overhead lights?

Detective: Yes, I can see that.

Prosecutor: And do you see the plume of smoke that just occurred --

Defense counsel: Your Honor, I am going to have to object. This is cumulative. It's now just being brought out to bring out emotions. It's prejudicial. It's not made for anything other than to inflame the jury at this point.

After the parties argued back and forth, the trial court stated, "Well, let's move along. It's already been played. Let's move along." The State then sought to replay a portion of the other video from State's Exhibit 5—the footage from Officer Houston's body-worn camera—but slowed down "to show the way in which the defendant exited his vehicle, trained his weapon on the officer, and shot him three times." Appellant objected to the video being slowed down because the offense did not occur in slow motion but also objected to replaying it at all, even at regular speed, because of "the inflammatory and prejudicial nature of repetitive playing of the video in front of the jury with their visceral reaction to it." The trial court pointed out it had only been played once and allowed the State to replay—once more—part of the body-worn camera video at normal speed. The State, however, never replayed the body-worn camera video after the jury returned.

Because the record does not reflect the State ever replayed the body-worn camera footage after the trial court ruled, we conclude any error in the trial court's

–14–

ruling was harmless. *See* TEX. R. APP. P. 44.2(b). We will turn, however, to review the replaying of the in-car camera video. Although appellant cites no authorities supporting his position, we will assume the applicability of rule 403 to the republication of evidence already admitted. Further, appellant's only timely objection to the in-car video being replayed was that it was cumulative; thus, only a cumulative complaint under rule 403 is preserved for our review. *See Schlett v. State*, No. 03-23-00297-CR, 2024 WL 131754, at *5 (Tex. App.—Austin Jan. 12, 2024, no pet.) (mem. op.) ("cumulative objections, without more, do not preserve claims under Rule 403 that the admission of evidence was unfairly prejudicial"). Rule 403 provides that courts may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Williams v. State*, 958 S.W.2d 186, 196 (Tex. Crim. App. 1997). In rule 403 analysis, courts must balance (1) the inherent probative force of the evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation, with (2) the proponent's need for the evidence, against (3) any tendency of the evidence to suggest a decision on an improper basis, commonly, an emotional one, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue

weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

We review the trial court's decision to admit evidence, including its rule 403 ruling, under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010); *see also Burgess v. State*, No. 05-17-00271-CR, 2018 WL 3322886, at *4 (Tex. App.—Dallas July 6, 2018, pet. ref'd) (mem. op., not designated for publication) (stating we reverse a trial court's rule 403 balancing rarely and only after a clear abuse of discretion). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Martinez*, 327 S.W.3d at 736.

Here, Officer Houston's patrol car footage had already been admitted into evidence and the part of it that captured the shooting was published to the jury immediately after Yatziry's testimony. According to the record before us, the State replayed fifteen seconds of the video at a slowed-down speed, and Detective Smith testified about his observations relating to who fired his weapon first. We cannot conclude the danger of needless presentation of cumulative evidence substantially outweighed the probative value of replaying the video at a slower speed. At a slower speed, the video more clearly shows that Officer Houston was shot and appellant shot himself and was motionless on the pavement prior to the officer ever drawing

and firing his weapon. Accordingly, we cannot conclude replaying the video at a slow speed was needless or that any such danger substantially outweighed the probative value in replaying the video. We overrule appellant's third issue.

### D. "Duplicative" photographic exhibits

In his fourth issue, appellant complains the trial court abused its discretion by admitting photographs duplicative of other admitted evidence. Appellant specifically complains of State's Exhibits 105 through 108. State's Exhibit 105 is a photograph of the front passenger compartment of appellant's truck from the perspective of standing just outside the driver's side door while open. State's Exhibit 106 is a photograph of appellant's keys and cell phone sitting on the driver's seat of appellant's truck. State's Exhibit 107 is a photograph of appellant's phone placed on the driver's seat of appellant's truck. And State's Exhibit 108 is a photograph of the cup holders in between the front driver's and passenger's side seats, holding a thermos and a bottle of water. When these exhibits were offered, appellant objected, stating they were cumulative and duplicative to other photographs already admitted. The trial court overruled appellant's objections.

Under rule 403, the trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of needlessly presenting cumulative evidence. *See* TEX. R. EVID. 403. State's Exhibits 95 through 97 similarly depict the front driver's seat of appellant's truck, the keys and phone on the seat, and the

thermos and bottle of water in cup holders. They were admitted before the exhibits in question here.

Even assuming it was error to admit State's Exhibits 105 through 108, which we do not decide, we conclude any error did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). Non-constitutional error is reversible only when it has a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). If we have a fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction. *Id.* In making this determination, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and degree of additional evidence indicating guilt, and (4) whether the State emphasized the complained of error. *Id.*

The photographs complained of here merely depict the interior of appellant's truck and do not pertain to the central, disputed issues in the case. Given this, we conclude the photographs in question did not have a substantial and injurious effect or influence in determining the jury's verdict; accordingly, we disregard any error. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's fourth issue.

### E. *Mistrial following sustained objections to State's closing argument*

In his final two issues, appellant argues the trial court abused its discretion in overruling his request for a mistrial after the trial court sustained two objections to

–18–

the State's closing argument. The State argued during closing, in pertinent part, as follows:

> Officer Houston then runs, on a bad knee, to the back of the defendant's truck as it's backing up. Go look at the pictures of his truck. You will see a backup camera right in the middle, right above the handle to pull down the tailgate. You will see that big screen there. So whether he is looking back or he is looking at that giant screen, who is he looking at? He is looking right at Officer Houston –

> Defense counsel: Your Honor, I object. That is assuming facts not in evidence. There was no testimony that was working, not working, anything about the vehicle's backup camera. So he is putting in facts that haven't been testified to in Court.

> Trial court: I will sustain.

> Defense counsel: Respectfully request the jury disregard.

> Trial court: The jury will disregard the last comment.

> Defense counsel: Respectfully request a mistrial.

> Trial court: Overruled.

Appellant argues the trial court abused its discretion in denying his motion for a mistrial. Assuming without deciding the argument was improper, we will consider whether any harm was incurable and a mistrial was required.

As stated above, a mistrial is an extreme remedy that should be granted only if residual prejudice remains after applying less drastic alternatives. *See Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016). The efficacy of a curative instruction is determined on a case-by-case basis. *Newport v. State*, No. 05-08-01008-CR, 2009 WL 1449374, at *3 (Tex. App.—Dallas May 26, 2009, pet. ref'd) (not designated for publication). In considering whether improper jury argument

–19–

warrants a mistrial, we balance three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of the conviction absent the misconduct. *Id.*

Here, the alleged misconduct was not severe and was unlikely to have had a strong prejudicial effect upon the jury. The trial court sustained appellant's objection to the argument and immediately instructed the jury to disregard the prosecutor's statements. Further, the jury charge instructed the jury it was "only permitted to receive evidence regarding the case from the witness stand" and it was "not to consider, refer to, or discuss any matters or issues not in evidence before you." *See Dies*, 649 S.W.3d at 286 ("The jury is presumed to have followed the court's instruction."). Additionally, as discussed above, strong evidence supported the State's case that appellant was aware Officer Houston was a peace officer when he shot him. We conclude the trial court did not abuse its discretion in denying appellant's motion for mistrial, and we overrule appellant's fifth issue.

Finally, appellant argues the State's closing argument "inserted [the prosecutor's] own feelings and the jury's purported feelings into the case and asked the jury to abandon its objectivity" and argues the trial court abused its discretion by denying another request for mistrial. The State began its rebuttal closing argument as follows:

> Ladies and gentlemen of the jury, I want y'all to take a look here, because if you just heard the same closing argument you probably may have forgotten who the victim is. Because according to [defense

counsel], this is this man that you are supposed to be caring about. This is the man that he feels --

Defense counsel: Objection, Your Honor. That's a total mistake of any closing argument or evidence in this case. It's getting into feelings, which is improper to discuss anybody's feelings with the jury. The jury is to decide the case based upon the evidence, and the evidence alone.

Trial court: That's correct. And the jury will not take into consideration one's feelings about another, or attorneys.

Defense counsel: It's improper to argue about an attorney's feelings.

Trial court: Let him have his time --

Defense counsel: I am asking for a ruling, Your Honor.

Trial court: Objection. Sustained.

Defense counsel: Thank you. Respectfully request a mistrial.

Trial court: Overruled.

As above, we will assume without deciding the argument was improper and consider whether any harm from the alleged improper argument was incurable. Permissible jury argument generally falls within four areas: (1) evidence summation, (2) reasonable deductions from the evidence, (3) responses to opposing counsel's arguments, and (4) pleas for law enforcement. *York v. State*, No. PD-1753-06, 2008 WL 2677368, at *5 (Tex. Crim. App. July 2, 2008) (not designated for publication). Striking at a defendant over the shoulder of counsel is not a permissible basis for jury argument; this happens when "the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Id.* at *4.

–21–

Here, we again find any allegedly improper argument was not severe and was unlikely to prejudice the jury against appellant. The trial court sustained appellant's objection before the trial prosecutor finished any statement about defense counsel's feelings. The trial court then agreed with defense counsel's statements that it "is improper to discuss anybody's feelings with the jury" and "the jury is to decide the case based upon the evidence, and the evidence alone," and further instructed the jury to "not take into consideration one's feelings about another, or attorneys." Defense counsel did not request any additional instruction. We conclude the trial court did not abuse its discretion in denying appellant's motion for mistrial. We overrule appellant's sixth issue.

## Conclusion

Having overruled appellant's six issues, we affirm the trial court's judgment.


/Ken Molberg/
KEN MOLBERG
Do Not Publish                          JUSTICE
TEX. R. APP. P. 47.2(b).
220951F.U05

–22–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JAIME JARAMILLO, Appellant

No. 05-22-00951-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 6, Dallas County, Texas Trial Court Cause No. F22-00084. Opinion delivered by Justice Molberg. Justices Reichek and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered May 31, 2024